## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CEDRIC TAYLOR, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | _____ |
| QUALITY LIVING SERVICES, INC., QLS GARDENS FACILITY, INC., QLS GARDENS, INC., QLS HAVEN LTD., QLS VILLAS, INC., QLS ACRES, INC. d/b/a QLS Meadows, and IRENE RICHARDSON, | ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Cedric Taylor ("Plaintiff" or "Taylor"), by and through undersigned counsel, hereby files this Complaint for damages and equitable relief against Defendants Quality Living Services, Inc., QLS Gardens Facility, Inc., QLS Gardens, Inc., QLS Haven Ltd., QLS Villas, Inc., QLS Acres, Inc. d/b/a QLS Meadows, and Irene Richardson (collectively, "Defendants").

## INTRODUCTION

Defendants have flagrantly violated some of the most well-known federal employment laws, thereby giving rise to the numerous legal claims asserted in this

action.  First, Defendants willfully failed to pay Taylor and all other similarly situated employees overtime for the hours they worked in excess of forty hours per week, in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA").  Accordingly, this is an action for unpaid wages and liquidated damages brought on behalf of Taylor and all other current and former non-exempt employees of Defendants who worked in excess of forty hours per week during the last three years but did not receive overtime at 1 ½ times their regular rate of pay, and who choose to opt in this action pursuant to the FLSA, 29 U.S.C. § 216(b).  Second, approximately two weeks after Taylor notified Defendants that he had suffered a stroke and requested temporary medical leave, Defendants terminated him and replaced him with a non-disabled employee, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  Taylor brings this action to seek redress for these myriad unlawful employment practices, and to vindicate his rights as well as those of all similarly situated employees.

## **JURISDICTION AND VENUE**

1. Pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 201 *et seq.*, 29 U.S.C. § 2601 *et seq.*, and 29 U.S.C. § 701 *et seq.*, this Court has subject matter jurisdiction over this action based upon federal question jurisdiction.

2.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because Defendants reside in the Northern District of Georgia and because all or a substantial part of the events and omissions giving rise to Taylor's claims occurred within the Northern District of Georgia.

## PARTIES

3.      Taylor is a citizen of the State of Georgia and a resident of Fulton County, Georgia.

4.      Defendant Quality Living Services, Inc. ("QLS") is a Georgia corporation.

5.      QLS maintains a corporate office in Atlanta that serves as the headquarters for several housing communities that it owns and operates in Atlanta, including QLS Gardens, QLS Haven, QLS Villas, and QLS Meadows.  (*See* http://www.qualitylivingservices.org (last visited April 9, 2014)).

6.      QLS Gardens is nominally owned by Defendants QLS Gardens Facility, Inc. and QLS Gardens, Inc.  QLS Haven is nominally owned by Defendant QLS Haven, Ltd.  QLS Villas is nominally owned by Defendant QLS Villas, Inc. QLS Meadows is nominally owned by Defendant QLS Acres, Inc.

7.      QLS is the parent corporation of sub-entities QLS Gardens Facility, Inc., QLS Gardens, Inc., QLS Haven, Ltd., QLS Villas, Inc., and QLS Acres, Inc.

For ease of reference, QLS and these QLS sub-entities will collectively be referred to hereafter as "the QLS Defendants."

8.     The QLS Defendants may each be served with a summons and a copy of the Complaint by delivering process to the same registered agent for service of process, Chad Henderson, Esq., who is located at 1350 Spring Street, Suite 485, Atlanta, Georgia 30309.

9.     Defendant Irene Richardson is the Executive Director of QLS.

10.     Upon information and belief, the QLS Defendants are recipients of federal funds and are otherwise subject to Section 504 of the Rehabilitation Act.

11.     All Defendants reside in the Northern District of Georgia, and are otherwise subject to personal jurisdiction in this Court.

12.     On or about May 19, 2009, Defendants hired Taylor in a maintenance position at QLS Gardens.  In or around August 2013, Taylor was transferred to an adjacent property, QLS Haven, where he continued to work in a maintenance position until he was terminated on February 28, 2014.  Taylor's duties included a variety of maintenance and repair tasks, including plumbing, electrical, painting and sheetrock, grounds keeping, and janitorial work.

13.     Throughout Taylor's employment with Defendants, he was a dedicated and hardworking employee.

## DEFENDANTS ARE JOINT EMPLOYERS AND/OR INTEGRATED EMPLOYERS AND/OR A SINGLE ENTERPRISE/ENTITY

14.     Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-13 above as if fully set forth herein.

15.     QLS and Richardson exercise control over all of the QLS Defendants, including exercising control over the terms and conditions of employment of employees who are assigned to work at the various QLS Defendants.

16.     The QLS Defendants are commonly controlled and managed by QLS and Richardson.  Tellingly, Defendants' website lists Richardson as the Executive Director and states that "Quality Living Services, Inc. *manages* the housing properties." (www.qualitylivingservices.org) (last visited April 15, 2014) (emphasis added).

17.     Defendants are operationally interdependent.

18.     The human resources and administrative functions of the QLS Defendants are controlled by and centralized with QLS and Richardson.

19.     Defendants are engaged in the same or similar activities, namely, providing housing and services to seniors.

20.     According to the Georgia Secretary of State's website, QLS, QLS Gardens, Inc., and QLS Haven, Ltd. share the same post office box.  The mailing

address for the other two QLS Defendants—QLS Villas, Inc. and QLS Meadows—is just a few miles away.

21.     The     QLS     Defendants     share     the     same     website, www.qualitylivingservices.org.

22.     Upon information and belief, the QLS Defendants share some of the same corporate officers.

23.     QLS and Richardson control, determine, and direct the day-to-day operations and functions of the other QLS Defendants.  QLS and Richardson establish the payroll, compensation, and other employment policies and practices for all of the QLS Defendants, including the policies and practices that form the basis of this lawsuit.

24.     QLS and Richardson supervised and controlled Taylor's terms and conditions of his employment, as well as all similarly situated employees, including the rate and method of payment.

25.     QLS and Richardson have the power and authority to hire and fire employees assigned to work at the other QLS Defendants.

26.     Richardson made the ultimate decision to terminate Taylor, and she signed Taylor's separation notice.

27.    The QLS Defendants regularly share services and personnel between and among themselves.  For example, although Taylor was assigned to work at QLS Meadows and subsequently QLS Haven, he and similarly situated employees were regularly required to perform work or be "on call" to perform work at the other QLS properties.  Taylor and similarly situated employees were also regularly required to participate in program activities at QLS's corporate office.

28.    Upon information and belief, each of the QLS sub-entities utilized forms and documents prepared by Richardson and QLS.  For example, a notice that was provided to Taylor subsequent to his termination concerning a change in the way "all staff" of the various QLS Defendants would be compensated was issued on QLS letterhead and signed by Richardson.

29.    Additionally, upon information and belief, QLS is the sponsor of the health plan that is offered to employees assigned to work at all QLS Defendants.

30.    At all times relevant to this Complaint, Defendants have functioned as Taylor's joint employer, and/or constitute a single enterprise/single entity, and/or are integrated employers under the FLSA, FMLA, Section 504 of the Rehabilitation Act, and all other applicable laws and regulations.

## ADDITIONAL FACTS PERTAINING TO FLSA COLLECTIVE ACTION

31.   Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-30 above as if fully set forth herein.

32.   At all relevant times, Taylor was a non-exempt employee under the FLSA, and he regularly worked in excess of forty hours per week.

33.   Defendants individually and/or jointly have at all relevant times been and remain an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

34.   Defendants individually and/or jointly have at all relevant times been and remain, an "Employer" within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.   Richardson is personally liable as an "Employer" under the FLSA because she acted directly or indirectly in the interest of one or more of the QLS Defendants with respect to Taylor and all other similarly situated employees.  29 U.S.C. § 203(d).

36.   At all relevant times, Taylor and all other similarly situated employees have been "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 206.

37.     Taylor brings this action on behalf of himself and all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

38.     In his position as a maintenance worker, Taylor regularly interacted with other maintenance and other non-exempt employees who worked at the various QLS Defendants.

39.     Taylor and these other similarly situated employees regularly worked overtime hours (hours in excess of 40 per week), but were not compensated by Defendants for their overtime worked at a rate of 1 ½ times their regular rate.

40.     When Taylor questioned Defendants' refusal to pay overtime, he was told "we don't pay overtime."

41.     Taylor and those similarly situated are individuals who were, or are, employed by Defendants as non-exempt employees at any time within three years prior to filing this Complaint and who worked overtime hours but did not receive overtime compensation at a rate of 1 and ½ times their regular rate of pay (hereinafter the "Collective Action Class").

42.     At all relevant times, members of the Collective Action Class, including Taylor, were paid by the hour or were otherwise non-exempt under the FLSA, and worked in excess of 40 hours per week.

43.     Defendants were employers of the Collective Action Class for the purposes of the FLSA.

44.     The precise number of such persons is unknown, and the facts on which the calculation of that number is dependent are in the sole possession of Defendants.

45.     The amounts due to the Collective Action Class are unknown at this time, and the facts on which the calculation of that number is dependent are in the sole possession of Defendants.

46.     Taylor will fairly and adequately protect the interests of the members of the Collective Action Class and he has retained counsel that is experienced and competent in the field of wage and hour law.

47.     Questions of law and fact common to the members of the Collective Action class predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members of the Collective Action Class.

48.     During the relevant time period, members of the Collective Action Class were not paid overtime at the required statutory rate for the hours they worked in excess of 40 hours per week.

49.     Members of the Collective Action Class are similarly situated under the FLSA because: (1) their primary job duty was working in a maintenance or similar

non-exempt position; (2) they are non-exempt under the FLSA; (3) they regularly work in excess of 40 hours per week; and (4) they did not receive overtime compensation at a rate of 1 and ½ times their regular rate of pay.

50.   At all relevant times, Defendants were aware that members of the Collective Action Class regularly worked hours in excess of 40 per week.

51.   At all relevant times, the policy of Defendants was not to pay members of the Collective Action Class overtime compensation at a rate of 1 and ½ times their regular rate of pay for hours worked in excess of 40 hours per week.

52.   Upon information and belief, Defendants' unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA and state wage and hour laws.

53.   Defendants were, or should have been, aware that state and federal law require it to pay employees performing non-exempt duties overtime at a rate of 1 and ½ times their regular rate for all hours worked in excess of 40 hours per week.

54.   Defendants' failure to pay members of the Collective Action Class overtime at a rate of 1 and 1/2 times their regular rate for all hours worked in excess of 40 hours per week was willful and in bad faith.

## ADDITIONAL FACTS PERTAINING TO FMLA AND REHABLITATION ACT CLAIMS

55.     Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-54 above as if fully set forth herein.

56.     On or about February 16, 2014, Taylor's long-time girlfriend, Anitra Palmer-Dawkins telephoned Taylor's supervisor, Dora Patterson, to notify her that Taylor had just been rushed to the emergency room with numbness and a headache.  Shortly thereafter, Palmer-Dawkins informed Patterson that doctors had confirmed that Taylor had suffered a stroke.

57.     As a result of his condition, Palmer-Dawkins told Patterson that Taylor would not be able to come to work that Monday.  Patterson asked Palmer-Dawkins to keep her apprised of Taylor's condition, which she did.

58.     On or about February 19, Palmer-Dawkins informed Patterson by text message that Taylor would be released from the hospital in about a week, but that he would require short-term leave for his disability.

59.     That same day, Patterson responded as follows by text message: "Ok . . . Whatever is needed to get him better."

60.     On or about February 20, Patterson telephoned Taylor in the hospital and told him that QLS does not offer short-term disability.

61.     On or about February 25, Patterson again telephoned Taylor in the hospital and told him that after speaking with Richardson, QLS would allow Taylor to return to work, but only if he could return at 100%.  Taylor informed Patterson that he wanted to return to work as soon as he could.  Patterson instructed Taylor to obtain a doctor's note that listed an anticipated return date to work so that she could hold his job open.

62.     Taylor obtained a letter from his neurologist dated February 26, which summarized his condition and stated that his recovery would be 1-2 weeks.

63.     On or about February 27, Palmer-Dawkins faxed the neurologist's letter to Patterson, and received a text message from Patterson confirming that she received it.

64.     On or about February 28, Taylor was released from the hospital.

65.     The next day, on March 1, Taylor received a separation notice in the mail, terminating his employment, effective February 28.  The termination notice was signed by Richardson, as the "Managing Agent," and alleged "lack of work" as the reason for the termination.

66.     On or about March 10, Palmer-Dawkins drove Taylor to QLS to retrieve his personal belongings.  When he arrived, Taylor was introduced to

Paul Mackey, a non-disabled maintenance employee who had just been transferred from QLS to assume Taylor's prior position at QLS Haven.

67.     Palmer-Dawkins, Taylor, and Patterson then had a meeting, in which Patterson expressed her sadness and disagreement with the termination decision. Patterson also provided Taylor a letter dated February 17, 2014 that Richardson had issued to "all staff" on QLS letterhead which changed their pay from an hourly basis to an annual salary.

68.     When Taylor was employed by Defendants, he participated in an Aetna health plan sponsored by QLS.

69.     Taylor is a qualified individual with a disability within the meaning of the Rehabilitation Act.

## COUNT I (COLLECTIVE ACTION AGAINST ALL DEFENDANTS) WILLFUL FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA

70.     Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-69 above as if fully set forth herein.

71.     Defendants have at all relevant times been engaged in a widespread pattern, policy and practice of violating the FLSA by failing to pay members of the Collective Action Class overtime at a rate of 1 and 1/2 times their regular rate for hours worked in excess of 40 hours per week.

72.    The overtime wage provisions set forth in the FLSA apply to Defendants to protect the members of the Collective Action Class.

73.    At all relevant times, members of the Collective Action Class were engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 206.

74.    At all relevant times, Defendants were and continue to be "employers" within the meaning of the FLSA, 29 U.S.C. § 203.

75.    At all relevant times, Defendants employed and/or continue to employ members of the Collective Action Class within the meaning of the FLSA.

76.    Taylor consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

77.    As a result of Defendants' failure to compensate the members of the Collective Action Class at a rate of 1 and 1/2 times their regular rate for hours worked in excess of 40 hours per week, Defendants have violated, and continue to violate the FLSA, including 29 U.S.C. §§ 207(a)(1) and 215(a).

78.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

79.    Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Taylor and members of the Collective Action Class.

80.    Due to Defendants' FLSA violations, Taylor and the members of the Collective Action Class are entitled to recover from Defendants their unpaid overtime wages for all of the hours they worked in excess of 40 hours per week, an additional and equal amount as liquidated damages for Defendants' willful violations of the FLSA, prejudgment interest, attorneys' fees and costs of litigation.

81.    Defendants are jointly and severally liable for the FSLA violations detailed herein.

## COUNT II (TAYLOR AGAINST ALL DEFENDANTS)
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

82.    Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-81 above as if fully set forth herein.

83.    Defendants were joint employers and/or integrated employers of Taylor under the FMLA and applicable law, thereby allowing each of their employees to be aggregated for purposes of establishing FMLA coverage, as well as allowing for the aggregation of Taylor's FMLA eligibility.

84.     Richardson is individually liable under the FMLA as an "employer" of Taylor because she acted, "directly or indirectly, in the interest" of one or more of the other covered Defendants.

85.     Defendants individually and/or jointly are employers for purposes of liability under the FMLA because they are engaged in an industry or activity affecting commerce, and they have employed 50 or more employees within 75 miles for each working day during each of 20 or more calendar weeks in the current or preceding calendar year.

86.     Taylor is an eligible employee for purposes of FMLA coverage because he was employed by Defendants for at least 12 months and provided at least 1,250 hours of service in the 12 months immediately preceding his need for leave.

87.     On February 16, 2014, Taylor suffered a stroke.  Taylor's long-time girlfriend, Palmer-Dawkins, notified and kept Defendants apprised of his medical condition.

88.     On or about February 25, Patterson instructed Taylor to provide a doctor's note in support of his request for leave so that she could his job open.

89.     On or about February 27, Palmer-Dawkins faxed a letter from Taylor's neurologist to Patterson, and received a text message from Patterson confirming that

she received it.   The letter summarized Taylor's condition and stated that his recovery would be 1-2 weeks.

90.   On or about February 28, Taylor was released from the hospital.

91.   The next day, on March 1, Taylor received a separation notice in the mail, terminating his employment, effective February 28.   The termination notice was signed by Richardson, as the "Managing Agent," and alleged "lack of work" as the reason for the termination.

92.   Shortly after his termination, Taylor was replaced by Paul Mackey, who is not disabled.

93.   Taylor's stroke and his related medical condition constitute a serious health condition that qualified him for FMLA leave and reinstatement rights.

94.   Defendants knew about Taylor's stroke and his medical condition.

95.   Taylor was entitled to twelve weeks of FMLA leave due to his stroke, which required hospitalization and ongoing physical therapy.

96.   Taylor was entitled to reinstatement by Defendants to the same or substantially similar position including the same or substantially similar terms and conditions of employment at the conclusion of his FMLA protected leave.

97.   Taylor was not reinstated by Defendants to the same or substantially similar position; instead, he was terminated after being on leave for approximately two weeks.

98.   Taylor suffered an adverse employment action.

99.   Defendants interfered with Taylor's exercise of the rights granted to him under the FMLA and/or retaliated against him for attempting to exercise his FMLA rights.

100.   Defendants' actions in interfering with Taylor's FMLA leave were committed with reckless disregard for his right to take up to 12 work weeks of leave time for a serious health condition and violated the FMLA, 29 U.S.C. § 2615.

101.   The effect of Defendants' actions has been to deprive Taylor of a job, as well as income in the form of wages, health insurance, and other benefits solely because of his right to leave under the FMLA.

102.   As a result, Taylor is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B)—including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

103.   Taylor is also entitled to liquidated damages for Defendants' violation of his rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii) because Defendants' actions in failing to return him to work were willful violations of the FMLA.

104.   Defendants are jointly and severally liable for the FMLA violations alleged herein.

## COUNT THREE (TAYLOR AGAINST QLS DEFENDANTS) VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

105.   Taylor hereby repeats and incorporates by reference each and every allegation in paragraphs 1-104 above as if fully set forth herein.

106.   Upon information and belief, the QLS Defendants are recipients of federal funding, thereby making them subject to Section 504 of the Rehabilitation Act.

107.   The QLS Defendants were joint employers and/or integrated employers of Taylor, and/or a single enterprise/single entity, thereby rendering them jointly and severally liable for the violations of the Rehabilitation Act alleged herein.

108.   Taylor is a qualified individual with a disability subject to the protections of Section 504 of the Rehabilitation Act.

109.   Approximately two weeks after Taylor informed Defendants that he had suffered a stroke, he was terminated.

110.   The QLS Defendants intentionally terminated against Taylor because of his disability in favor of a non-disabled person.

111.   The actions of the QLS Defendants as set forth above constitute an actionable violation of Section 504 of the Rehabilitation Act.

112.   The QLS Defendants intentionally discriminated against Taylor due to his disability, entitling Taylor to an award of compensatory damages under Section 504 of the Rehabilitation Act.

113.   As a direct and proximate result of this intentional discrimination, Taylor has suffered out of pocket losses and has been deprived of job-related economic benefits, including in the form of wages and other job related benefits, all in an amount to be established at trial.

114.   The QLS Defendants' actions have caused, continue to cause, and will cause Taylor to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

115.   Taylor is entitled to be reinstated to employment by the QLS Defendants, and if restatement is not feasible, Taylor is entitled to an award of damages for future lost wages and benefits of employment.

## PRAYER FOR RELIEF

WHEREFORE, Taylor respectfully requests that this matter be tried by jury and that the Court enter judgment in his favor on all counts, declare Defendants' actions to be in violation of Taylor's federally protected rights, and award him the following relief:

a.      Designation of the FLSA claims in this matter as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons employed by Defendants as non-exempt employees during the relevant time period, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

b.      Unpaid wages for unpaid overtime compensation due under the FLSA;

c.      Liquidated damages under the FLSA, FMLA, and other applicable laws;

d.      Back pay from the date of termination up to the time of judgment;

e.      Reinstatement or front pay in lieu of reinstatement;

f.      Compensatory damages;

g.      Punitive damages to the extent available;

h.      Pre-judgment and post-judgment interest at the prevailing rate;

i.      Attorneys' fees and costs; and

j.      Such other relief as the Court deems just and proper.

**A TRIAL BY JURY IS REQUESTED.**

Respectfully submitted this 18th day of April, 2014.

HALL, ARBERY, GILLIGAN, ROBERTS & SHANLEVER LLP

*/s/ Jonathan D. Letzring*
Jonathan D. Letzring
Georgia Bar. No. 141651
jletzring@hagllp.com
3340 Peachtree Road, NE, Suite 2570
Atlanta, Georgia  30326
(404) 442-8778 (phone)
(404) 537-5555 (fax)

ATTORNEY FOR PLAINTIFF